ENTRY
 

 BARKER, District Judge.
 

 This is before the court on defendants’ motion to dismiss for lack of personal jurisdiction and venue, or in the alternative, to transfer to the Southern District of Ohio, Western Division. For the reasons discussed below, although we find that we have personal jurisdiction and venue, defendants’ motion to transfer is granted.
 

 7.
 
 BACKGROUND
 

 The facts giving rise to this declaratory judgment action are not in dispute. On June 25,1995, decedent Judith Bussell was operating her automobile on Interstate 65 near Indianapolis, Indiana, in the Southern District of Indiana. Mrs. Bussell’s son, Robert Bussell, and his fiance, Jodi Barrows, were passengers in her ear. Mrs. Bussell lost control of her vehicle and collided with a vehicle being driven by Sophia Zapf. As a result of the collision, Judith Bussell and Jodi Barrows were killed almost immediately and Robert Bussell died on July 5, 1995, from injuries sustained in the collision. All of the persons involved in the collision, Judith and Robert Bussell, Jodi Barrows, and Sophia Zapf, were residents of the Southern District of Ohio.
 

 At the time of the collision, Judith Bussell was covered by an automobile insurance policy (“the policy”) issued by plaintiff State Farm Mutual Automobile Insurance Company (“State Farm”). State Farm is a corporation organized under the laws of Illinois with its principal place of business in Illinois, which also does business in the Southern District of Ohio. The policy was negotiated, entered into, paid for and delivered in Ohio, and the premiums were calculated based upon Mrs. Bussell’s residence in Ohio and the fact that she garaged her vehicles in Ohio. (See, policy, Conditions § 6).
 

 On November 28, 1995, State Farm filed this declaratory judgment action seeking a declaration that the policy does not cover Robert Bussell for his injuries and subsequent death, because of the Indiana Guest Statute, I.C. § 344-40-3, which provides that an operator of a motor vehicle is not liable for the death of her child while the child was being transported without payment. In Count Two of its complaint, State Farm additionally alleges that the policy does not provide uninsured motorist cover
 
 *648
 
 age for the death of Judith Bussell because it claims that her death was a direct and proximate result of her own negligence. (Complaint).
 

 Defendants move to dismiss State Farm’s declaratory judgment action for lack of personal jurisdiction over them pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and on the basis of improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. In the alternative, defendants move to transfer this action to the United States District Court for the Southern District of Ohio, Western Division, pursuant to 28 U.S.C., §§ 1406(a) or 1404(a).
 

 II. PERSONAL JURISDICTION
 

 A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if a court of the state in which the district court sits would have such jurisdiction.
 
 Enviroplan, Inc. v. Western Farmers Elec. Co-op.,
 
 900 F.Supp. 1055, 1059 (S.D.Ind.1995),
 
 citing, Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V.,
 
 28 F.3d 572, 580 (7th Cir.1994);
 
 Wilson v. Humphreys (Cayman) Ltd.,
 
 916 F.2d 1239, 1243 (7th Cir.1990),
 
 cert. denied,
 
 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); Fed.R.Civ.P. 4(e) (A federal court sitting in diversity can exercise personal jurisdiction only so far as allowed by the law of the state in which it sits). An Indiana court may exercise personal jurisdiction over the defendants where: (1) Indiana’s long-arm statute authorizes the exercise of such jurisdiction; and (2) exercise of such jurisdiction complies with the due process clause of the fourteenth amendment to the United States Constitution.
 
 Nucor,
 
 28 F.3d at 580;
 
 Wilson,
 
 916 F.2d at 1243. In the case of Indiana’s long-arm statute, the twin inquiries collapse into a single due-process inquiry, because the scope of Indiana’s long-arm statute, Trial Rule 4.4(A), has been deemed to extend the State’s personal jurisdiction to the constitutional limit.
 
 [1]
 

 Wilson,
 
 916 F.2d at 1243;
 
 Oddi v. Mariner-Denver, Inc.,
 
 461 F.Supp. 306, 308 (S.D.Ind., 1978).
 
 See also Brokemond v. Marshall Field & Co.,
 
 612 N.E.2d 143, 145 (Ind.App.1993). Thus, we analyze whether personal jurisdiction over defendants is permissible solely with regard to the due process clause.
 

 The due process clause protects a defendant from being subject to binding judgments of a forum with which the defendant has established no meaningful “contact, ties or relations.”
 
 Burger King Corp. v. Rudzewicz,
 
 471 U.S. 462, 471-72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985),
 
 quoting, International Shoe Co. v. State of Washington,
 
 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). The Supreme Court has construed the due process clause to entitle a person to “fair warning” as to what conduct will subject the person to a foreign jurisdiction.
 
 Shaffer v. Heitner,
 
 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J. concurring in judgment). The Supreme Court has stated that a defendant receives such “fair warning” so as to be amenable to specific jurisdiction of a foreign court where the defendant engages in some purposeful or deliberate activity effecting the forum, and where the litigation results from injuries that “arise out of or relate to” those activities.
 
 Burger King,
 
 471 U.S. at 472, 105 S.Ct. at 2182. This requirement of some deliberate or purposeful conduct or availment on the defendant’s part ensures that a defendant will not be hailed into a jurisdiction solely as a result of “random,” “fortuitous,” or “attenuated” contacts.
 
 Burger King,
 
 471 U.S. at 475, 105 S.Ct. at 2183,
 
 quoting,
 
 respectively
 
 Hanson v. Denckla,
 
 357 U.S. 235, 253, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958);
 
 Keeton v. Hustler Magazine, Inc.,
 
 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79
 
 *649
 
 L.Ed.2d 790 (1984); and
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980).
 

 Defendants contend that this court cannot exercise personal jurisdiction over them because this is a contract action, and that their lack of meaningful
 
 contractual
 
 ties with the state of Indiana prevents us from exercising jurisdiction over them. State Farm counters that the action is actually a tort action, and the fact that the tort — the collision — took place in Indiana is sufficient to establish the contacts with the forum necessary for us to exercise jurisdiction over defendants. Thus, our resolution of the jurisdictional question raised in this case depends on whether this action is properly characterized as an insurance contract action or as a tort action.
 

 We agree with State Farm that the questions posed in its declaratory judgment complaint are questions of tort law, not insurance contract interpretation. With regard to Count One, State Farm asks us to declare that the policy does not cover the death of Robert Bussell because the insured, Judith Bussell, is not legally liable for his injuries under the Indiana Guest Statute. The liability section of the policy clearly provides that State Farm will “pay damages which an insured becomes
 
 legally liable
 
 to pay because of: a) bodily injury to others ...” (Policy, Section 1 — Liability — Coverage A(l)). Thus, the question before the court is not whether the policy language itself provides for coverage, but whether the insured, Judith Bussell, is legally liable to pay damages.
 

 Count Two of State Farm’s complaint asks for a declaration that the policy does not provide uninsured motorist coverage for the death of Judith Bussell, because her death was a direct and proximate result of her own negligence. The uninsured motorist coverage section of the policy provides that State Farm “will pay damages for bodily injury an insured is
 
 legally entitled
 
 to collect from the owner or driver of an uninsured motor vehicle.” (Policy, Section III — Uninsured Motor Vehicle — Coverage U). Thus, the question posed by State Farm in Count Two does not involve interpretation of the policy language, but determination of what, if any, damages Judith Bussell is entitled to collect.
 

 In
 
 Nationwide Ins. Co. v. Fryer,
 
 62 Ohio App.3d 905, 577 N.E.2d 746 (1990), the Court of Appeals of Ohio held that “the measure of damages from an automobile accident is a substantive question to be decided based upon principles of tort law.”. 577 N.E.2d at 749,
 
 quoting, Mayse v. Watson,
 
 1985 WL 7613 (Erie App.) (unreported). The
 
 Mayse
 
 and
 
 Fryer
 
 courts reasoned, and we agree, that:
 

 ... an insurance policy is simply a means of underwriting the injured party’s losses. * * * The contract [insurance policy], however, is not intended to establish what type and to what extend damages should be recoverable. The damages available to the injured party must first be determined by the tortfeasor’s degree of care owed the injured party, and any associated negligenee/fault on the part of the injured insured. Such factors, based upon tort law, clearly limit the injured party’s right to recover and, as such, necessarily influence the insured’s measure of damages. Logically, if tort law controls the factors which establish how the injury occurred and who was at fault, then tort law should also control the measure of damages which are recoverable.
 

 Id.
 
 [2]
 

 Defendants cite a number of cases for the proposition that an action such as this one is properly characterized as a contract dispute. However, in all of these cases, the question of what coverage was due under the policy turned on interpretation of insurance policy language, rather than on a determination of what legal damages were available under the principles of tort law.
 
 [3]
 
 Because the issues
 
 *650
 
 placed before the court by State Farm’s declaratory judgment complaint are primarily issues of tort law, and not of insurance policy interpretation, we find that the action is properly characterized as a tort action. Because the basis of the tort action — the collision in which defendants’ decedents were killed — occurred in the Southern District of Indiana, we find that defendants have sufficient contacts with this district to support our exercise of personal jurisdiction over them.
 

 III. VENUE
 

 Defendants also move to dismiss for improper venue. Venue in a diversity case is controlled by 28 U.S.C. § 1391(a), which states that in a diversity action venue is proper only in:
 

 (1) a judicial district where any defendant resides, if all defendants reside in the same State,
 

 (2) a judicial district in which a substantial part of the events of omissions giving rise to the claim occurred, or
 

 (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
 

 The parties agree that venue is not proper in the Southern District of Indiana under clause (1), because all defendants reside in the Southern District of Ohio. It is also undisputed that venue in this district cannot be based on clause (3) because this action could have been brought in the Southern District of Ohio, where all the defendants in this case reside.
 
 [4]
 

 Whether venue is proper in this district under clause (2) depends, as did our determination of the personal jurisdiction issue, on whether we view this as a contract or a tort action. If it were purely a contract action, then we would look primarily to the place where the insurance policy was negotiated, drafted and entered into, rather than the place where the collision occurred, to determine where a substantial part of the events giving rise to the action occurred; and we would likely conclude that venue was proper in Ohio but not in Indiana. However, because we have found that this action is properly characterized as a tort action, and the collision occurred in this district, we must conclude that venue is proper in this district under § 1391(a)(2).
 

 TV. MOTION TO TRANSFER
 

 Having decided that this court can properly exercise personal jurisdiction over defendants, and that venue is proper in this district, we now turn to defendants’ alternative motion to transfer this action to the Southern District of Ohio, Western District. Defendants move for transfer under 28 U.S.C. § 1406(a) and § 1404(a). Section 1406(a) applies when venue is improper in the transferor court, while § 1404(a) authorizes transfers even from forums where ven1 ue is proper.
 
 See, Van Dusen v. Barrack,
 
 376 U.S. 612, 634, 84 S.Ct. 805, 818, 11
 
 *651
 
 L.Ed.2d 945 (1964). Thus, if we are to grant defendants’ motion to transfer, it must be under § 1404(a).
 

 Section 1404(a) provides: “For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.” Transfer is appropriate under § 1404(a) where the moving party establishes that (1). venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (8) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.
 
 Vandeveld v. Christoph,
 
 877 F.Supp. 1160, 1167
 
 (N.D.Ill.1995); Von Holdt v. Husky Injection Molding Systems, Ltd.,
 
 887 F.Supp. 185, 188 (N.D.Ill., 1995). We have already stated that venue is proper in this district, and that venue and jurisdiction are proper in the Southern District of Ohio, where all defendants reside. We must now address whether transfer to the Southern District of Ohio will serve the convenience of the parties and the witnesses, and the interest of justice.
 

 Section 1404(a) gives the district court discretion to “adjudicate motions for transfer according to an ‘individualized, case-by-case consideration of convenience and fairness.’ ”
 
 Stewart Org., Inc. v. Ricoh Corp.,
 
 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988),
 
 quoting, Van Dusen,
 
 376 U.S. at 622, 84 S.Ct. at 812. We must consider the three factors specified — the convenience of the parties, the convenience of the witnesses, and the interest of justice — in light of all the circumstances of the case.
 
 Coffey v. Van Dorn Iron Works,
 
 796 F.2d 217, 219 & n. 3 (7th Cir.1986). The relative weight to be accorded each factor is not specified in § 1404(a), rather “[t]he weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge.”
 
 Id.
 
 The party moving for transfer has the “burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient,” than the transferor forum.
 
 Id.,
 
 at 220. The circumstances of the instant case lead the Court to conclude that we should transfer this action to the Southern District of Ohio.
 

 A
 
 Convenience to the Parties
 

 In general, the plaintiffs choice of forum ordinarily is entitled to some weight.
 
 FDIC v. Citizens Bank & Trust Co.,
 
 592 F.2d 364, 368 (7th Cir.1979),
 
 cert. denied,
 
 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). This is less true, however, when the plaintiff chooses a forum outside his “home turf.”
 
 General Instrument Corp. v. Mostek Corp.,
 
 417 F.Supp. 821, 822-23 (D.Del.1976);
 
 Kendall U.S.A., Inc. v. Central Printing Co.,
 
 666 F.Supp. 1264, 1268 (N.D.Ind.1987),
 
 citing, Coffey,
 
 796 F.2d at 219. Where, as here, the chosen forum is not the plaintiffs residence, the defendants’ place of residence becomes more important in determining the convenience to the parties.
 
 Kendall,
 
 666 F.Supp. at 1268. When evaluating the convenience of the parties, courts must consider “the parties’ respective residences and their abilities to bear the expense of trial in a particular forum.”
 
 College Craft Cos., Ltd. v. Perry,
 
 889 F.Supp. 1052, 1056 (N.D.Ill., 1995)
 
 quoting Heller Financial, Inc. v. Riverdale Auto Parts, Inc.,
 
 713 F.Supp. 1125, 1130-31 (N.D.Ill.1989). In this case, all defendants reside in the Southern District of Ohio. Plaintiff has its principal place of business in Illinois, but has an office in the Southern District of Ohio. Furthermore, the relationship between the parties, based upon Judith Bussell’s insurance policy with State Farm, is also centered in the Southern District of Ohio. State Farm does not dispute that the convenience of the parties is best served by transferring this action to the Southern District of Ohio, but instead contends that convenience to witnesses and the interest of justice are better served by trying the action in this district, and that those factors outweigh the convenience to the parties.
 

 B. Convenience to Witnesses
 

 Defendants argue that the witnesses who would likely testify on behalf of defendants would be the administrators of the two estates, both of whom reside in the Southern District of Ohio. Both JoAnn Sedgwick, ad
 
 *652
 
 ministrator of Robert Bussell’s estate, and Lloyd Dooley, administrator of Judith Bus-sell's estate, have filed affidavits stating that it would be inconvenient for them to travel to Indianapolis for a trial in this action. (Sedgwick Aff., ¶ 8; Dooley Aff., ¶¶ 9-10). They further state that the estate of Judith Bussell has minimal assets, and that it would be unnecessarily expensive for both estates to hire local counsel for a trial in this district. (Sedgwick Aff., ¶ 19; Dooley Aff., ¶ 22). Furthermore, the other driver involved in the collision, Sophia Zapf, resides in Cincinnati, in the Southern District of Ohio; and another eye-witness to the collision, Brian McKnight, resides in Dayton, Ohio, also located in the Southern District of Ohio.
 
 [5]
 

 The only countervailing interest asserted by State Farm regarding the convenience of witnesses is that police officers at the scene of the accident would be Indiana residents. Even so, a majority of the witnesses are located in the Southern District of Ohio, and trying this action in this district would impose a heavy burden on them. Therefore, we conclude that the convenience of the witnesses would be best served by transferring this action to the Southern District of Ohio.
 

 C. Interest of Justice
 

 The interest of justice includes such factors as “ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case.”
 
 Heller Financial,
 
 883 F.2d at 1293;
 
 Coffey,
 
 796 F.2d at 221. Both parties focus on the importance of having a judge who is familiar with the applicable state law try the case. Based upon their premise that this is a contract action, defendants argue that, under the conflict of laws principles applicable to contract cases, Ohio contract law controls this case, and thus the interest of justice favors transfer. State Farm argues, conversely, that, under the conflict of laws rules applicable to tort cases, Indiana tort law applies, and thus the interest of justice favors trying the case in this district.
 

 We need not address the question of which state’s law applies to this action, and consequently whether a federal judge in Ohio or in Indiana would be more familiar with the applicable state law, because we believe that, whichever state’s law is applicable, the interest of justice and the convenience of the parties and witnesses is still best served by transferring this case to the Southern District of Ohio.
 
 See, Cellutech, Inc. v. Centennial Cellular Corp.,
 
 871 F.Supp. 46, 51 (D.D.C.1994) (in contract case, even though subject matter of contract was located in Michigan and contract was governed by Michigan law, action would be transferred to Southern District of New York for convenience of parties and witnesses). Forcing defendants to litigate in Indiana would impose a definite hardship on them, and on many, if not most of the witnesses, as well. State Farm will have to travel whether the case is tried in Indianapolis or in Cincinnati, and has not presented us with any reason to believe that transferring this action to the Southern District of Ohio would pose any significant hardship on it. For the reasons stated above, we find that the interest of justice and the convenience of the parties and witnesses is better served by transferring this action to the Southern District of Ohio. Accordingly, defendants’ motion to transfer pursuant to 28 U.S.C. § 1404(a) is hereby granted.
 

 V. CONCLUSION
 

 We find that this ease is properly characterized as a tort action and that, because the automobile collision which gave rise to the tort action occurred in Indiana, we could properly exercise personal jurisdiction over defendants and venue is properly laid in this district. However, primarily because all defendants, the administrators of the decedents’ estates, all persons involved in the collision, and at least one other eye-witness
 
 *653
 
 to the collision are located in Ohio, we find that the interests of justice and convenience to the parties and witnesses is best served by transferring this action to the Southern District of Ohio, Western Division.
 

 [1]
 

 . Indiana’s long-arm statute provides in part:
 

 A) Acts Serving as a Basis for Jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:
 

 (2) causing personal injury or property damage by an act or omission done within this state;
 

 %
 
 sfc jfc ‡
 

 (6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made; * * *
 

 [2]
 

 . In
 
 Miller v. State Farm Mut. Auto. Ins. Co.,
 
 87 F.3d 822, 825 (6th Cir.1996), the Sixth Circuit called
 
 Fryer
 
 into question. However,
 
 Miller
 
 also stated that if the measure of damages was at issue, they would apply the tort law of the state where the tort occurred.
 

 [3]
 

 .
 
 See, e.g., American Family Mut. Ins. Co. v. Williams,
 
 839 F.Supp. 579, 583 (S.D.Ind.1993) (where question before the court was whether insured's claim was excluded by a provision in the policy, action was characterized as a contract dispute);
 
 Travelers Ins. Companies v. Rogers,
 
 579
 
 *650
 
 N.E.2d 1328, 1330 (Ind.App.1991) ("Although the underlying occurrence in this appeal initially gave rise to a tort action, ... [the] claim is based exclusively upon the insurance contract; it is therefore a contract action”);
 
 State Farm Mut. Auto. Ins. Co. v.
 
 Conway, 779 F.Supp. 963 (S.D.Ind.1991) (declaratory judgment action in which a court is called upon to interpret an insurance contract);
 
 Stillwell v. Brock Bros. Inc.
 
 736 F.Supp. 201, 204 (S.D.Ind.1990) ("The present case involves interpreting an insurance contract [interpreting term "occurrence” as used in insurance policy]; therefore the court looks to the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the place of business of the parties to determine which state has the most significant contacts.").
 
 State Auto. Mut. Ins. Co. v. Spray, 547
 
 F.2d 397, 398 (7th Cir.1977) (where plaintiff sought declaration that policy was void because of fraudulent misrepresentations on policy application, issue is one of contract).
 

 [4]
 

 . Even if venue is also proper in the Southern District of Ohio under clause (2), it does not follow that venue is improper in this district, for it is well established that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.
 
 See, Enviroplan,
 
 900 F.Supp. at 1062; 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure: Jurisdiction 2d
 
 § 3806 (Supp.1995) ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.”).
 

 [5]
 

 . In addition, we note that defendants state that they anticipate filing a counterclaim for damages, which we suspect might raise issues relating to policy interpretation. (Kevin Lee Swick Aff., ¶ 14). Should testimony related to the insurance policy become relevant to this action, the State Farm employees who dealt with Judith Bussell when the policy was issued, who would likely provide such testimony, are presumably residents of the Southern District of Ohio, since the policy was issued out of a State Farm office in Cincinnati.