LANCER INSURANCE COMPANY,

v.

Bhavesh PATEL and Nina Patel.

No. Civ.A. 00–0090.

United States District Court,
W.D. Louisiana.

May 1, 2000.

James M Dill, Lafayette, LA, for Lancer Insurance Co, plaintiff.

William A Pigg, Joseph C Bartels, New Orleans, LA, for Nina Patel, defendant.

### *RULING*

LITTLE, Chief Judge.

Before this court is defendants Bhavesh and Nina Patels' ("the Patels") motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is DE-NIED.

### I. *Background*

On 24 May 1997, Bhavesh and Nina Patel boarded a bus in Orlando, Florida en route to Texas. Members of the Patel family had chartered the bus, owned by

First Class Coach Inc. ("First Class Coach"), a Florida corporation, in order to attend a relatives' wedding in Texas. While traveling near Natchitoches, Louisiana, the bus driver fell asleep at the wheel, causing the bus to overturn and seriously injure the Patels and several other bus passengers. Nina and Bhavesh Patel, both California residents, were taken for emergency treatment in Natchitoches. Nina Patel was then transferred to Shreveport for further medical care. Once the Patels were well enough to travel, the plaintiffs returned to California.

The First Class Coach bus was insured by plaintiff, Lancer Insurance Company ("Lancer"), a corporation organized under the laws of Illinois with its principal place of business in New York. Several of the bus passengers ultimately filed suit against Lancer in both Florida and Louisiana courts. Lancer has admitted liability in both states. After the accident, Lancer paid all of the Patels' medical costs incurred in Louisiana and some of their medical bills incurred in California. Throughout 1998, Lancer and the Patels attempted to settle their dispute over the Patels' remaining claims against Lancer. During this period, Lancer sent a letter to the Patels voluntarily agreeing to extend the one-year prescriptive period set forth in La.Civ.Code Ann. art. 3492 (West 1994). The parties now dispute the effect of the attempted derogation of the prescriptive. On 18 January 2000, Lancer filed a complaint in this court requesting that this court grant declaratory relief by proclaiming that all claims arising out of the 24 May 1997 accident have prescribed. The Patels filed their own suit in Florida on 8 March 2000 against First Class Coach, and Ernest Haegele, the bus driver. The Patels did not name Lancer as a defendant.

On 17 March 2000, the Patels filed a motion to dismiss Lancer's complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that this court lacks personal jurisdiction over them. In their motion, the Patels assert that they have never lived in Louisiana, have not returned to Louisiana since the accident, have never entered into a contract in Louisiana, and have never injected goods or services into the stream of commerce in Louisiana. The Patels argue that their contacts with Louisiana are limited to an accident and hospitalization in Natchitoches and Shreveport. Lancer does not dispute these statements.

Lancer opposes the motion to dismiss, arguing that the Louisiana long-arm statute permits Louisiana to exercise personal jurisdiction over the Patels pursuant to La.Rev.Stat.Ann. § 13:3201(B) (West 1992),[1] which authorizes the exercise of jurisdiction over a nonresident defendant as far as is permitted by due process. According to Lancer, personal jurisdiction is proper given that the Patels purposefully directed their activities towards Louisiana by boarding a bus that passed directly through Louisiana and by accepting medical treatment in Louisiana hospitals.

## II. *Motion to Dismiss for Lack of Personal Jurisdiction*

When a nonresident defendant brings a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). If the court rules on the motion without an evidentiary hearing, the plaintiff may satisfy this burden by making a prima facie showing of jurisdiction; proof by a preponderance of the evidence is not required. *See Wilson*, 20 F.3d at 648; *WNS, Inc. v. Farrow*, 884 F.2d 200, 204 (5th Cir.1989). In reviewing a motion to dismiss for lack of personal jurisdiction, the court will ac-

---

1. All parties, including the court, agree that jurisdiction is not proper under La.Rev.Stat. Ann. § 13:3201(A) because the defendants have not engaged in any of the activities that establish jurisdiction under subsection (A).

cept the uncontroverted allegations set forth in the complaint as true. *See Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999); *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985). Where there are conflicts between the parties' affidavits, the court must resolve the discrepancies in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists. *See Thompson,* 755 F.2d at 1165.

■ Where, as here, the court's jurisdiction is predicated on diversity of citizenship, the court may exercise jurisdiction over a nonresident defendant if: (1) the forum state's long-arm statute confers personal jurisdiction over the defendant; and (2) exercise of such jurisdiction comports with due process under the Constitution. *See Latshaw,* 167 F.3d at 211; *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 545 (5th Cir.1985). The Louisiana long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant as far as is permitted by due process. *See La.Rev.Stat. Ann.* § 13:3201(B). Thus, we are confronted in this case with synonymous state and federal principles. Our inquiry, therefore, is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional requirements. *See Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990).

The Supreme Court has held that due process is satisfied when the defendant: (1) has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state such that he could anticipate being haled into that state's courts; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–76, 105 S.Ct. 2174, 2182–84, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The court must examine fairness only if the plaintiff first establishes that the nonresident defendant has sufficient minimum contacts with the forum state. *See Allred v. Moore & Peterson,* 117 F.3d 278, 286 (5th Cir.1997).

### 1. *Minimum Contacts*

■ The purposeful availment prong of the minimum contacts analysis "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or the 'unilateral activity of another party or a third person.'" *See Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted). The minimum contacts of a nonresident defendant may support either "specific" or "general" jurisdiction. General personal jurisdiction is based on the defendant's "continuous and systematic" contacts in the forum state that are unrelated to the underlying suit. Specific jurisdiction attaches where the defendant's contacts with the forum that arise out of or are related to the suit. *See Allred,* 117 F.3d at 286; *Wilson,* 20 F.3d at 647.

■ In this case since it is evident that the Patels have had no contacts with Louisiana aside from those that arose from the 24 May 1997 bus accident, this court may not exercise *general* jurisdiction over the plaintiffs. If this court has jurisdiction at all over the Patels, it must be based on specific jurisdiction relating to the Patels's contacts with Louisiana that arose from the 24 May 1997 bus accident. When the Patels purchased their tickets from First Class Coach in Florida, they knew the route taken by the bus would include passage through Louisiana. Any number of incidents could have brought the Patels into court in this state. The fact that an accident occurred in Louisiana subjected the Patels to the jurisdiction of Louisiana courts. *See generally State Farm Mut. Auto. Ins. Co. v. Bussell,* 939 F.Supp. 646, 649–50 (S.D.Ind.1996) (finding personal jurisdiction by virtue of the fact that the accident occurred in the Southern District of Illinois in case brought by insurer for a declaratory judgment that insurer not liable to passengers of car driven by its insured). The Patels purposefully directed their traveling activities through the state

of Louisiana. It was entirely reasonable for them to have anticipated being haled into court here. We, therefore, conclude that the defendants had minimum contacts with the state of Louisiana.

### 2. *Fairness*

■ As we have found "minimum contacts" between defendants' activities and the state of Louisiana, the court must next ascertain whether its exercise of jurisdiction comports with traditional principles of fair play and substantial justice. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (citing *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 159). In accessing fairness, the court should consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief, ... the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interests of the several States in furthering substantive social policies.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 107, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92, 105 (1987) (citations omitted); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

### (a) *Burden on the Patels*

■ "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 112, 107 S.Ct. at 1033. To defeat jurisdiction, the defendant must present a compelling case that conducting the litigation in this court would be "so gravely difficult and inconvenient" that he would be at a severe disadvantage in comparison to plaintiffs. *Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85; *see Guidry v. United States Tobacco Co.*, 188 F.3d 619, 630 (5th Cir.1999).

■ Although Louisiana might not be the most propitious forum in which the defendants might oppose Lancer's complaint, it is not a wholly inconvenient jurisdiction. In fact, in their response to Lancer's opposition to their motion to dismiss, the Patels acknowledge that they are not arguing that it would be more burdensome to litigate in Louisiana than in Florida. *See* Defs.' Reply at 6. Rather, they argue that since they have already filed suit in Florida, they should not have to undergo the additional burden of defending in Louisiana. *See id.* This argument is not compelling. The Patels have chosen voluntarily to take on the ordeal of litigating in Florida. We conclude that the Patels have not shown that it would be "gravely difficult" for them to litigate in Louisiana.

### (b) *Interest of Forum State*

■ The accident that gave rise to Lancer's request for declaratory judgment occurred on Louisiana's highways. The injured passengers were cared for at Louisiana hospitals. As mentioned previously, several of the other passengers involved in the 27 May 1997 bus accident have already filed suit in Louisiana against First Class Coach, the bus driver, and Lancer. Consequently, Louisiana has multiple reasons to be interested in the outcome of this lawsuit.

The Patels argue that under Florida's conflicts of law doctrine, Florida law should apply to the lawsuit they have filed in Florida and, accordingly, Louisiana has no interest that would permit jurisdiction over Lancer's complaint for declaratory relief. In contrast, Lancer insists that Louisiana law applies to the Patels's suit in Florida. We could, at this point, engage in a lengthy analysis of conflicts of law to decide the question of whether Louisiana or Florida law should apply. We think it is improper, however, for this court to tell Florida state courts what law to apply to a case currently pending before them. Lancer's complaint merely asks us to determine whether Louisiana's statute of limitations has expired. We leave the conflicts of law issue to the Florida courts. Our task simply is to determine, based on a number of considerations, whether personal jurisdiction is appropriate over Lancer's request for declaratory relief. Surely,

Louisiana has a significant interest in determining whether its own statute of limitations has prescribed.

### (c) *Lancer's Interest in Obtaining Relief*

Lancer seeks declaratory relief in this court in order to clarify and protect its interest in terms of future litigation in Louisiana courts and in the defendants' suit against it in Florida should Florida courts ultimately apply Louisiana law. The fact that we do not chose to resolve the complex issue of whether the Florida courts should decide to employ Louisiana's prescriptive statute does not change the fact that Lancer has a logical and compelling reason for seeking relief in Louisiana. Louisiana courts are the proper and preferable forum in which to seek a declaratory judgment that this state's prescriptive period is applicable to the tort action that arose on Louisiana's highways. Whether there is any merit to Lancer's complaint, is an entirely different matter.

### (d) *Interstate Efficiency and Social Policy Concerns*

The Patels have chosen to litigate in Florida courts, the place where they bought their bus ticket and where First Class Coach is domiciled. Other bus passengers have litigated suits in both Florida and Louisiana. Both states, therefore, have developed a policy interest in this litigation and neither state conclusively can be said to be the more efficient forum. Concerns for interstate efficiency and social policy thus do not provide a compelling reason for declining personal jurisdiction.

### III. *Other Possible Grounds for Dismissal of Plaintiff's Claim for Declaratory Relief*

Although the defendants' motion was brought as one to dismiss for lack of personal jurisdiction, in defending their arguments, both parties weave a discussion of the merits of Lancer's complaint requesting declaratory relief. The Patels brought this action as a motion to dismiss pursuant to Rule 12(b)(2). Based on the foregoing

discussion, this court has concluded that it does have personal jurisdiction over the Patels and therefore may exert jurisdiction over Lancer's complaint for declaratory relief. At this time, the parties have not given us sufficient information to enable us to rule on the ultimate merits of Lancer's complaint. Should the parties wish us to determine whether declaratory relief is warranted, they should submit an appropriate motion.

### IV. *Conclusion*

Based on the foregoing analysis, we conclude that Lancer has established that the Patels have minimum contacts with Louisiana and that Louisiana's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Accordingly, the defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is DENIED.